**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Darcy Lynn Burnside Non-Marital**  Case No.
**Assets Trust Dated July 8,1996, on**
**behalf of herself and all those**   Hon.
**similarly situated,**
  Plaintiff,

v.

**County of Ottawa**
Defendant.

_____/

**PLAINTIFF'S  CLASS  ACTION COMPLAINT**
**FOR DECLARATORY RELIEF AND DAMAGES**

Plaintiff Darcy Lynn Burnside Non-Marital Assets Trust ("Trust") dated July 8,1996, on behalf of itself and all those similarly situated, by and through counsel, and for its Class Action Complaint, states as follows:

**INTRODUCTION**

1. This is a case of governmental abuse that cries out for a remedy, especially in light of *Tyler v. Hennepin Cnty., Minnesota,* 143 S. Ct. 1369 (2023).

2. Defendant's conduct caused the deprivation of Plaintiff and the putative Class Members of valuable property rights consisting of equity in real property without just compensation.

3. This abuse stems from the Defendant's property tax foreclosure process. Michigan law generally authorizes counties to foreclose on private properties whose

owners have failed to pay all property taxes. Those properties may be sold at auction, and the proceeds used to make municipalities whole for unpaid taxes, as well as reasonable fees and expenses.

4. The instant litigation does not challenge the forfeiture and foreclosure of the subject properties. Rather, it challenges what occurred after the properties were forfeited and foreclosed upon, and the deprivation of the Plaintiff and putative Class Members of substantial equity in their properties.

5. Furthermore, the properties owned by Plaintiff and the putative Class Members had significant equity (*i.e.,* they were worth much more than the amount owed for unpaid taxes, plus reasonable fees, and expenses.)   This excess value ("equity") was not refunded to Plaintiff and putative Class Members. Plaintiff and putative Class Members were permanently deprived of this equity without any compensation.

6. Plaintiff and the putative Class Members all fell behind in paying their property taxes. Their properties were all forfeited and then foreclosed upon.

7. "The act of taking is the event which gives rise to the claim for compensation." *Knick v. Township of Scott* 139 S. Ct. 2162 (2019).

8. The "taking" occurred when the title absolutely vested in the County.

2

9. The "surplus value" over the amount of taxes, interest and reasonable fees must be returned to the taxpayer. *Tyler v. Hennepin Cnty., Minnesota,* 143 S. Ct. 1369 (2023).

10. As it concerns the "Takings Clause", Ottawa County ("Ottawa or County") is solely responsible for the taking of the Plaintiffs' property. *Hall v. Meisner,* 51 F. 4th 185 (6th Cir. 2022)

11. Landowners may seek the difference between the fair market value of their homes and the taxes they owe, whether or not the treasurer obtained surplus proceeds at a foreclosure sale. *Hall v. Meisner* 51 F. 4th 185 (6th Cir. 2022).

12. Centuries old principles require that landowners have a property interest in their "equitable title." *Fox v. Saginaw County* 67 F. 4th 284, 290 (6th Cir. 2023).

13. The Michigan Supreme Court in *Rafaeli, LLC v Oakland County,* 505 Mich. 429, 952 N.W. 2d (2020) held the that a treasurer's failure to return the surplus to the landowner was a "takings clause" violation of the state constitution. However, it held that the former landowner was not entitled to the fair market value of the property (minus the amount owed) but instead stated that a landowner could seek "no more" and "no less" than the surplus from that sale.

14. On December 22, 2020, Michigan enacted amendments to its tax foreclosure scheme ("GPTA") that established different procedures depending on

3

whether the treasurer transferred or sold property before or after the *Rafaeli* decision on July17, 2020.

15. The amended act was based on *Rafaeli* and the now unconstitutional notion that the prior landowners were limited by the difference between auction value and the amount owed, not the former owner's equity. *See Hall v. Meisner, id., at 192.*

16. Defendant's actions constitute the improper and unconstitutional taking of the property of the Plaintiff and the putative Class Members without just compensation.

17. To the extent Defendant's actions were permitted under the previous or current version of MCL § 211.78m(8) or § 211.78(t)(2), those provisions are unconstitutional.

18. Defendant's actions constitute a violation of the Fifth and Fourteenth Amendments of the United States Constitution pursuant to 42 USC § 1983 and § 1988, and unjust enrichment under Michigan law. Plaintiffs also seek a declaratory judgment against Defendant for its unlawful actions and a declaration that MCL §§ 211.78m and 211.78t are facially unconstitutional.

## **PARTIES**

19. Darcy Lynn Burnside created the Darcy Lynn Burnside Non-Martial Assets Trust dated July 8, 1996 ("Trust" or "Plaintiff") and served as its original Trustee. Darcy Lynn Burnside passed away on April 2, 2022. Bruce Burnside is the

duly appointed Successor Trustee of the Trust. The Trust owned certain property ("Property") in Spring Lake Township, Ottawa County, Michigan, by virtue of a deed dated July 8, 1996. A copy of that deed is attached at Exhibit A and incorporated here.

20. Defendant County of Ottawa ("Ottawa") is a legal entity formed and existing under the laws of the State of Michigan and is controlled and/or operated by a duly designated Board of Commissioners. It is a political subdivision of the State of Michigan which is delegated the responsibility to collect delinquent property taxes. Unless otherwise stated, Ottawa acted through the Ottawa County Treasurer.

## JURISDICTION AND VENUE

21. This is a civil action seeking unpaid "just compensation" and other monetary damages against Defendant for violations of the Fifth and Fourteenth Amendments to the United States Constitution.

22. This Court has jurisdiction pursuant to 28 USC § 1331, which authorizes federal courts to decide cases considering federal questions; 28 USC § 1343, which authorizes federal courts to hear civil rights cases; 28 USC § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act; 42 USC §1983 which provides jurisdiction for constitutional torts; and 28 USC § 1367, which authorizes supplemental state law claims.

23. Venue is proper in this Court as Defendant conducts or has conducted its business in the Western District of Michigan.

## GENERAL ALLEGATIONS

### FORFEITURE AND FORECLOSURE UNDER THE GENERAL PROPERTY TAX ACT

24. This case stems from the administration of Michigan's General Property Tax Act ("GPTA"), MCL §§ 211.1-211.157, which is the statutory process enacted for the collection of unpaid and delinquent real property taxes through real property forfeiture and foreclosure.

25. The matters at the heart of this litigation concern matters *after* the taxation and forfeiture process is completed, and equity remains after counties such as Ottawa are paid in full for all delinquent taxes, interest, penalties, and fees.

26. As used in this Complaint:

    a.    "Tax Delinquency" means the past due tax owed on a property plus additional compounding interest, fees, penalties, and costs; and

    b.    "Equity" means the amount by which a property's value exceeds its Tax Delinquency.

27. The GPTA permits the recovery of unpaid real-property taxes, penalties, interest, and fees through foreclosure and sale of the property on which there is a tax delinquency.

28. Pursuant to the GPTA, a county treasurer may choose to act as the collection agent for the municipality where the property is located when taxpayers become delinquent on their property taxes or, at the election of the county, the State itself may act as the collection agent. MCL § 211.78(8).

29. Ottawa opted to act as the collection agent for Ottawa, also known as the Foreclosing Governmental Unit ("FGU"), pursuant to MCL § 211.78(8).

30. The GPTA requires a county to take certain enumerated steps to collect delinquent property taxes and initiate foreclosure proceedings. After notice and hearing, tax-delinquent properties are forfeited to Ottawa. The tax-delinquent properties are then foreclosed after a judicial foreclosure hearing by the Circuit Court, and title to the forfeited property is transferred to the county treasurer. If the property is not timely redeemed by the March 31 after the foreclosure, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. MCL § 211.78 *et seq.*

31. Prior to December 23, 2020, once title was vested in the county treasurer, the property was then disposed of as follows:

> (1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest, and other costs (the "minimum bid"); or

> (2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction the July after foreclosure and, if not sold, again in October.

7

MCL § 211.78m.

32. Ottawa, through its Treasurer, administered a foreclosure process such that in most cases, after foreclosed real property was sold (typically for more than the Tax Delinquency), the Treasurer retained the entire amount of the proceeds. At no point did Ottawa or anybody with the power to do so return the Equity or otherwise provide just compensation to the former property owners whose Equity was taken.

33. After December 23, 2020, if the property was foreclosed after July 17, 2020, once title was vested in the county treasurer, the property was then disposed of as follows:

(1) The state or municipality where the property is located has the right to claim the property in exchange for the payment of the fair market value if a notice of intention was filed or the "minimum bid" if the notice wasn't filed;

or

(2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction the July after foreclosure and, if not sold, again in October. MCL § 211.78m.

(3) If by the first of July following the foreclosure sale a prior landowner files a notice of intention to claim requesting for the "remaining proceeds" and the property is not purchased for fair market value less the minimum bid if the landowner files the procedure which includes filing a motion in Circuit Court and possibly competing with a mortgagee the landowner may receive the "remaining proceeds."

34. Landowners who lost their property prior to July 18, 2020, will receive no compensation whatsoever unless the Supreme Court orders that *Rafaeli, LLC Oakland County,* applies retroactively.

8

## THE CONDUCT AT ISSUE HEREIN REFLECTS COUNTY POLICY

35. The actions described herein are a voluntary policy, custom, and/or practice of Ottawa, and/or its final policymaker(s).

36. This voluntary policy and/or practice of Ottawa is sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and its progeny.

37. Specifically, Ottawa made the affirmative, voluntary, and discretionary decision to select and designate the County Treasurer to function as the FGU. *See* MCL § 211.78(3)-(6).

38. Moreover, Ottawa, either through enactment of laws or regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority, has administered Ottawa's foreclosure and auction process generally, including MCL § 211.78m(8), so that after Ottawa sells a parcel at auction, it retains either the entire amount of the proceeds or significantly more than allowed under the Fifth Amendment of the Constitution of United States, even if the proceeds exceed the amount of the Tax Delinquency. Ottawa rarely if ever, returns anything to the property owner. The statutory procedure by which the property owner can secure a return of his, her, or its "Equity" both under the amended statute and pre -*Rafaeli* is constitutionally defective and must be struck down.

9

39. Further, Ottawa, either through enactment of laws and regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority, has administered Ottawa's foreclosure process generally, including MCL § 211.78m(8), such that Ottawa is able to obtain the Equity that should belong to the property owner, without providing any procedural due process enabling the property owner to secure a return of his, her or its Equity.

40. Accordingly, the actions at issue here were undertaken pursuant to an official county policy for purposes of *Monell*.

41. The GPTA, and specifically MCL § 211.78m(8) and t(2), did not require the practices of which the Plaintiff and putative Class Members complain. Rather, the GPTA can be fairly read to provide for Equity to be returned to the previous owner of a foreclosed property before the resulting funds are allocated.

42. In the alternative, the GPTA, in particular MCL § 211.78m(8) and t(2), are inherently unconstitutional: if the act requires Ottawa's conduct as set forth herein, then, the Act violates the United States and Michigan Constitutions for all of the reasons that Defendant's conduct violates them.

43. The actions of Ottawa were designed to cause harm intentionally or wantonly to Plaintiff and the putative Class Members due to the utter disregard of Plaintiff's and the putative Class Members' constitutionally protected rights.

10

44. On December 23, 2020, Michigan enacted an amendatory act which was meant to be curative of the unconstitutional former sections of the GTPA, specifically, MCL 211.78m and MCL 211.78(t)(2), which purported to grant Plaintiff and putative Class Members "just compensation" equivalent to fair market value. However, despite all the new developments in decisional law and the so-called curative amendments to GPTA, Plaintiff and the putative Class Members presently have no constitutionally adequate remedy or procedure to receive "just compensation" under Michigan law. Therefore, the Plaintiff and the putative Class Members look to this Court to provide a remedy under the U.S. Constitution, federal law, and other applicable law to provide such "just compensation."

<u>SPECIFIC ALLEGATIONS RELATING TO THE TRUST</u>

45. The Trust owned certain property ("Property") in Spring Lake Township, Ottawa County, Michigan, by virtue of a deed dated July 8, 1996. *See* Exhibit A.

46. The Trust seeks to recover its Equity in the Property after Defendant's foreclosure and sale of the Property to pay delinquent real estate taxes owed by the Trust by virtue of its ownership of the Property.

47. After Plaintiff fell behind on its property taxes, Ottawa, through its Treasurer, initiated forfeiture and foreclosure proceedings in 2020 against the property owned by Plaintiff.

48. As a result of the GPTA procedure, a Judgment of Foreclosure was entered in the

11

Ottawa County Circuit Court on February 12, 2021, against Plaintiff which vested title solely and absolutely in the County of Ottawa and its Treasurer.

49. Plaintiff owed approximately $33,000 in delinquent property taxes, interest, penalties, and fees ("delinquent property taxes") on the Property as of December 31, 2020.

50. No other liens encumbered the Property at the time of the foreclosure.

51. Ottawa County was the Foreclosing Governmental Unit (FGU) in the Property's tax foreclosure proceeding, Ottawa County Circuit Court Case No. 20-6181-CZ.

52. A copy of Defendant's Notice of Judgment Foreclosure is attached as Exhibit B and incorporated herein

53. At the time of the entry of the Judgment of Foreclosure by Ottawa County Circuit Court, Plaintiff's Trustee was not residing at the Property and was living in a care facility.

54. Prior to the foreclosure and thereafter the prior Trustee was terminally ill and in need of a conservator.

55. By virtue of that Judgment of Foreclosure, Defendant seized ownership of the Property, transferring the Property to Ottawa County for the delinquent taxes.

56. Before that event, Plaintiff held legal and equitable title in the Property; after that event, Plaintiff held no title to the Property at all. *Hall v. Meisner, et al.*, 51 F. 4th 185, 196 (6th Cir. 2022).

57. On or about September 15, 2021, Defendant sold the Property to Matthew Tighe and Kimberly Nash ("New Owners") at a public tax auction for $171,500.00. A copy

of Defendant's deed to the New Owners is attached at Exhibit C and incorporated here

58. Defendant wrongfully took Plaintiff's Equity and /or surplus in the Property when it transferred Plaintiff's Property to the New Owners.

59. Defendant applied $46,452.73 of the auction sale proceeds to Plaintiff's delinquent property taxes which included an extra $13,000.00 of costs to clean up the property, and retained approximately $135,500 of the "remaining proceeds" in the Property.

60. In April 2022, Plaintiff's successor Trustee discovered that a foreclosure judgment and sale had occurred after the predecessor Trustee died, and contacted the County.

61. Plaintiff made several demands that Defendant return the equity to the Trust for the benefit of the Trust's beneficiary the daughter of the late Darcy Burnside.

62. Defendant has refused to return any Equity to the Plaintiff.

## CLASS ALLEGATIONS

63. This action is brought by Plaintiff individually and pursuant to FED. R. CIV. P. 23 on behalf of the owners of real property in Ottawa during the relevant statutorily- limited time period, as extended because of tolling by applicable case law, who were subject to the unconstitutional process which resulted in the taking and/or unconstitutional forfeiture of their Equity, but excluding those who have separately filed their own personal post-forfeiture legal actions in state or federal courts.

64. The proposed class consists of all the owners of real property in Ottawa whose real

property, during the relevant time period, was seized through a real property tax foreclosure, which was worth more than the Tax Delinquency, and who were not refunded the Equity. This class is inclusive of other proposed class actions which only seek "remaining proceeds" as defined by *Rafaeli, LLC, id.*

65. The number of persons who have been injured by the practices discussed herein is sufficiently numerous to make class action the most practical method to secure redress for the injuries sustained and to provide class wide equitable relief.

66. Plaintiff's claims are common to, and typical of, those raised by the putative Class they seek to represent, including:

   a. Whether Ottawa has been voluntarily exercising discretion to administer MCL § 211.78 in an unconstitutional or otherwise illegal manner, or whether Ottawa has been acting to voluntarily enforce an unconstitutional statute which each has willingly assumed to undertake via MCL § 211.78;

   b. Whether each putative Class Member's property, prior to foreclosure, was worth more than the total Tax Delinquency owed to Ottawa;

   c. Whether each putative Class Member's property had Equity greater than the Tax Delinquency owed to Ottawa;

   d. Whether Defendant deprived Class Members of Equity without just compensation after foreclosing on their property;

   e. Whether Defendant kept the remaining Equity for their benefit, or caused the loss of Equity through their actions; and

   f. Whether Defendant failed to pay just compensation or failed to have or undertake a process to return the Equity.

67. There are clear questions of law raised by the named Plaintiff's claims

14

common to, and typical of, those raised by the putative Class it seeks to represent,

including:

a. Whether MCL § 211.78m forbids Defendant from returning Equity to Class Members;

b. Whether MCL § 211.78m does entail such a prohibition, and if so, whether the statute is facially unconstitutional;

c. Whether the decision in *Rafaeli* applies retroactively;

d. Whether the revisions to MCL § 211.78 apply to the actions of Defendant as set forth herein;

e. Whether the GPTA is unconstitutional either facially or applied to the putative Class Members;

f. Whether the Defendant has committed an unconstitutional taking by refusing to pay just compensation when seizing Equity beyond the Tax Delinquency, and has appropriated property in the form of Equity without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Article X, Section 2 of the Michigan Constitution;

g. Whether the Defendant committed an inverse condemnation by destroying Equity via the seizure process and/or the later selling the property, and then retaining the Equity;

h. Whether the putative Class Members had a protected property interest in their property's Equity and is it limited by auction price;

i. Whether the Defendant deprived the putative Class Members of any opportunity to seek the return of their Equity after foreclosure so as to deprive the putative Class Members of their procedural due process rights;

j. Whether the Defendant acted arbitrarily and capriciously, and/or in a manner that shocks the conscience, in seizing the putative Class Members' Equity;

15

k.  Whether the Defendant violated the Class Members' due process rights in seizing the putative Class Members' Equity; and

l.  Whether the Defendant has been unjustly enriched by its retention of putative Class Members' Equity.

68. The violations of law and resulting harm alleged by the named Plaintiff are typical of the legal violations and harm suffered by all putative Class Members.

69. Plaintiff, if appointed as Class representative, will fairly and adequately protect the interests of the putative Class Members, and will vigorously prosecute the suit on behalf of the putative Class; and is represented by experienced counsel.

70. The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to putative Class Members and/or one or more of the Defendant.

71. Defendant has acted, failed to act, and/or is continuing to act on grounds generally against Plaintiff and all putative Class Members in the same manner.

72. The violations of law and resulting harm alleged by the named Plaintiff are typical of the legal violations and harm suffered by all putative Class Members.

73.   The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual putative members of the Class and/or one or more of the Defendant.

16

## COUNT I
## IMPROPER TAKING WITHOUT JUST COMPENSATION
## IN VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS
## 42 USC § 1983 AND § 1983

74. Plaintiff repeats, re-alleges and incorporates herein by reference all prior paragraphs.

75. This claim for an improper taking without just compensation in violation of the Fifth and Fourteenth Amendments of the United State Constitution is being made against Ottawa pursuant to 42 USC § 1983 and § 1988.

76. The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking by Ottawa.

77. Ottawa, in violation of 42 USC § 1983, has taken Plaintiff's and the putative Class Members' property interests in the form of Equity and has appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

78. Ottawa has refused to take any action for the payments of just compensation for its seizures of Equity from the Plaintiff and putative Class Members.

79. By its refusal to take any action for the payment of just compensation at the time of the taking, Ottawa has deprived Plaintiff and the putative Class Members of their constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution pursuant to 42 USC § 1983 and § 1988.

17

80. Ottawa has not paid just compensation.

81. Ottawa's actions were designed to cause harm intentionally or wantonly to Plaintiff and the putative Class Members due to the utter disregard of Plaintiff's and the putative Class Members' constitutionally protected rights.

82. Plaintiff and the putative Class Members have been injured and have suffered damages.

## COUNT II
## INVERSE CONDEMNATION
## VIOLATION OF THE MICHIGAN CONSTITUTION, ARTICLE X, SECTION 2

83. Plaintiff repeats, re-alleges and incorporates herein by reference all prior paragraphs.

84. Defendant has taken Plaintiff's and the putative Class Members' property interests in the form of Equity and has appropriated property for public use without the payment of just compensation.

85. Defendant has done so without using any direct condemnation process, including those outlined under the Uniform Condemnation Procedures Act, MCL § 213.51, *et seq.,* and in violation of Article X, Section 2 of the Michigan Constitution.

86. The actions of the Defendant caused an unjust taking of Plaintiff's and putative Class Members' entire equity in their property.

87. As a direct and proximate result of Defendant's unconstitutional taking of Plaintiff's properties, Plaintiff and putative Class Members have experienced substantial loss of value and ordinary use and enjoyment of their properties.

88. The injury to the Plaintiff and putative Class Member property owners is unique or special because this group of Plaintiffs had substantial Equity in their property.

89. Defendant has not and will not provide Plaintiff and the putative Class Members any opportunity to claim their Equity after the seizure and/or later sale of their respective properties, nor did Defendant provide or have a constitutionally sufficient procedure to claim just compensation at the time the Defendants seized title to their property interests.

90. Defendant has not paid just compensation.

91. Defendant's actions were designed to cause harm intentionally or wantonly to Plaintiff and the putative Class Members due to its calculated disregard of Plaintiff's and the putative Class Members' constitutionally protected rights.

92. The Plaintiff and putative Class Members whose Equity was taken are entitled to compensation under Article X, Section 2 of the Michigan Constitution.

93. Plaintiff and the putative Class Members have been injured and have suffered damages.

## COUNT III

## VIOLATION OF PROCEDURAL DUE PROCESS
## 42 USC § 1983 AND § 1988

94. Plaintiff repeats, re-alleges and incorporates herein by reference all prior paragraphs.

95. The Fourteenth Amendment guarantees procedural due process to Plaintiff and the putative Class Members.

96. Plaintiff and the putative Class Members have a constitutionally protected property interest in the Equity of their respective properties.

97. Plaintiff's Constitutional right of not having its property taken without just compensation is a self-executing right stemming from the Bill of Rights and the Michigan Constitution.

98. MCL § 211.78t has a 3 month "notice of intention to claim" requirement.

99. The 3-month "notice of intention to claim" requirement is unreasonable when such a fundamental and core right granted by the federal and state constitution is involved.

100. The strict enforcement of the "notice of intention to claim" requirement related to Plaintiff's "takings claim" would effectively divest Plaintiff of the access to the Courts intended by the grant of the substantive right. *Curtin v Dep't of State Hwys*, 127 Mich. App. 160, 163; 339 NW2d 7 (1983) (citation omitted); *Mays v. Governor of Michigan*, 506 Mich. 157 (2020.)

101. The 3-month "notice of intention to claim" requirement would invoke the harsh and unreasonable in the consequences doctrine pertaining to self-executing constitutional

provisions which would curtail and unduly burden the Plaintiff's pursuit of its protected claims.

102.    MCL 211.78t is unconstitutional based on the above recited principles.

103.    Ottawa has denied Plaintiff and the putative Class Members these rights by failing to provide any constitutionally reasonable or adequate procedure at all for Plaintiff and the putative Class Members to secure the return of their Equity after their properties' sale or transfer.

104.    MCL 211.78t makes no provision for taxpayers who have mental, physical, or cognitive infirmities; for disabled taxpayers' fiduciaries; or for deceased taxpayers' fiduciaries, beneficiaries and heirs.

105.    As a direct and proximate result of Ottawa's failure to provide adequate procedural due process safeguards, Plaintiff and the putative Class Members have been injured and have suffered damages.

106.    Neither Plaintiff nor any putative Class Member has an adequate remedy at law except as set forth in this Complaint.

## COUNT IV
## UNJUST ENRICHMENT

107.    Plaintiff repeats, re-alleges and incorporates herein by reference all prior paragraphs.

108.    Ottawa has received the benefit of substantial Equity from Plaintiff and the

putative Class Members.

109.   Under these circumstances, it would be inequitable for Ottawa to retain the

Equity which they have received from Plaintiff and the putative Class Members.

## COUNT V
## DECLARATORY RELIEF

110.   Plaintiff repeats, re-alleges and incorporates herein by reference all prior

paragraphs.

111.   An actual controversy exists between Plaintiff and putative Class Members

and Defendant regarding the administration of the GPTA tax foreclosure procedures.

112.   Plaintiff and putative Class Members are entitled to a declaration that the

failure of the GPTA and Michigan law to provide delinquent taxpayers a basis for and a

method to recover the Equity in their homes after they are taken is a violation of their rights

to just compensation and equal protection.

113.   Plaintiff and putative Class Members are entitled to declaratory judgment that

Ottawa cannot exercise its right of first refusal without paying fair-market value for the

property and reimbursing the property owners for their Equity above any Tax Delinquency

owed.

114.   Plaintiff and putative Class Members seek a declaratory judgment that Ottawa

cannot treat property owners who face tax foreclosure in 2021 more favorably than the

similarly situated property owners who were foreclosed in earlier years before recent

changes to MCL 211.78m.

## **RELIEF REQUESTED**

Wherefore, Plaintiff and the putative Class Members respectfully ask that this Court:

a.     Enter an order certifying this case as a class action;

b.     Enter an order declaring the conduct of Defendant as unconstitutional under the United States and Michigan Constitutions;

c.     Enter an Order that MCL §211.78m and MCL §211.78t are facially unconstitutional.

d.     Enter an Order for an award of full compensatory damages for those injuries and damages sustained by Plaintiff and putative Class Members, including disgorgement of Equity for each respective property;

e.     Enter an order for additional damages and/or compensation to reach an amount equaling 125% of the property's fair market value if this Court determines that private property consisting of an individual's Equity was taken for public use pursuant to Article X, Section 2 of the Michigan Constitution;

f.     Enter an Order for damages pursuant to 42 USC §§ 1983 and 1988;

g.     Enter an Order for an award of interest as provided for in *Knick v. Twp.*

*of Scott*;

h.    Enter an order for an award of reasonable attorneys' fees and litigation expenses pursuant to 42 USC § 1988, and any and all other applicable laws, rules, and statutes;

i.    Enter an award for exemplary and punitive damages;

j.    Enter an order for declaratory judgment that Defendant's conduct is unlawful under the GPTA;

k.    Enter Orders that, pursuant to USC § 1403 and FED. R. CIV. P. 5.1, invite the Attorney General of Michigan to intervene, as the Plaintiff seeks to declare MCL §§ 211.78m & 211.78t unconstitutional, and if the Court deems it necessary certify the question to the Supreme Court of Michigan;

l.    Enter an Order that, pursuant to USC § 1403 and FED. R. CIV. P. 5.1, invite the Attorney General of Michigan to intervene, as the Plaintiff seeks to declare that the 2021 revisions to the GPTA are retroactive, and if the Court deems such necessary, to certify the question to the Michigan Supreme Court; and

m.    Enter an Order for all other such legal and equitable relief that this Court deems proper and just.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Respectfully submitted,

/s/ Scott F. Smith
Scott F. Smith (P28472)
Smith Law Group, PLLC
30833 Northwestern Hwy, Suite 200
Farmington Hills, MI 48334
(248) 626-1962
smithsf.law@gmail.com
Co-Counsel for Plaintiff

/s/ Mark L. McAlpine
Mark L. McAlpine (P35583)
McAlpine PC
3201 University Drive, Suite 200
Auburn Hills, MI 48326
(248) 373-3700
mlmcalpine@mcalpinepc.com
Co-Counsel for Plaintiff

Roger G. Cotner (P36569)
Cotner Law Offices
PO Box 838
Grand Haven, MI 49417
616-846-7153
roger@cotnerlaw.us
Co-Counsel for Plaintiff